UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

JAMILYA PINA,                          *
                                       *
        Plaintiff,                     *
                                       *
        v.                             *            Civil Action No. 11-11483-JLT
                                       *
THE CHILDREN'S PLACE RETAIL            *
STORES, INC. and JEAN RAYMOND,         *
                                       *
        Defendants.                    *

MEMORANDUM

March 14, 2013

TAURO, J.

I.      Introduction

        Plaintiff Jamilya Pina initiated this action against Defendants The Children's Place Retail

Stores, Inc. ("TCP") and Jean Raymond after Defendants terminated her employment and then

failed to rehire her, allegedly on account of her race in violation of 42 U.S.C. § 1981. Defendants

have moved for summary judgment. Because Pina has failed to establish a prima facie case of

racial discrimination and has further failed to proffer any evidence of pretext by Defendants,

Defendants' Motion for Summary Judgment [#32] is ALLOWED.

II.     Factual Background[1]

        Pina, an African-American woman, began working as a TCP Sales Associate at its South

_____

[1] The court presents the facts, properly supported in the record, in the light most favorable
to Pina.

1

Shore Plaza store in 2006.[2] In June or July of 2007, she applied for an Assistant Store Manager position at the Cambridgeside Galleria store. Defendant Raymond, a white man, interviewed and hired Pina.[3] Pina reported to Store Manager Ingrid Trench, an African-American woman.[4]

During this period, Pina evidently had a rocky relationship with Michael Williams, an African-American man who was the father of three of Pina's children and worked at the South Shore Plaza store.[5] Williams and Pina sometimes lived together, but in July 2007 Pina began to suspect that Williams was romantically involved with other TCP employees.[6] Pina relayed to her former supervisor, South Shore Plaza Store Manager Kristen Fernandes, that Williams was having an affair with Assistant Store Manager Melody Mowatt. During their phone conversation, Pina also accused Mowatt and another South Shore Plaza manager, Stephanie Giordano, a white woman living with Williams, of falsifying Williams's time cards.[7] Pina sometimes drove Williams to work and, on an occasion when he arrived late, Williams had told her that one of the assistant store managers would take care of it.[8]

---

[2] Pina Dep. 28:10-29:11; Raymond Aff. ¶ 3 [#33-3].

[3] Pina Dep. 33:24-35:13; Raymond Dep. 51:15-16; Raymond Aff. ¶ 4 [#33-3].

[4] Pina Dep. 36:2-6.

[5] Pina Dep. 37:21-22,

[6] Pina Dep. 43:13-15, 48:4-52:13; Raymond Dep. 67:2-8; Raymond Aff. ¶¶ 7-8, 10 [#33-3].

[7] Pina Dep. 59:2-60:11, 63:12-65:10; Raymond Dep. 75:17-77:13; Raymond Aff. ¶¶ 7-9, [#33-3].

[8] Pina Dep. 60:9-62:8.

Fernandes reported this conversation to Raymond on July 21, 2007.[9] That same day, Raymond drove to the South Shore Plaza store to investigate Pina's fraud allegation. He and Fernandes reviewed three weeks of time cards and questioned all of the assistant store managers. Their investigation did not yield any evidence of theft or fraud.[10]

Three days later, Pina accused Trench, her supervisor at the Cambridgeside Galleria, of sleeping with Williams. While on her way to work, Pina stopped at a Dunkin Donuts and encountered Trench's partner, Joe Leslie, whom she knew from a technical training class they had attended together years earlier.[11] Using expletives in front of the couple's young daughter, Pina told Leslie that Trench was sleeping with Williams.[12] Trench, very upset after learning of the exchange, reported the incident to Raymond. Trench denied having any relationship with Williams, and Pina later admitted that she had no knowledge of any relationship.[13]

After receiving this report from Trench, Raymond questioned Pina. Pina admitted that she encountered Leslie and accused Trench of sleeping with Williams.[14] Raymond contends that Pina acknowledged using profanity to describe the relationship.[15] Pina does not recall this one way or

---

[9] Raymond Aff. ¶ 7 [#33-3].

[10] Raymond Dep. 78:11-80:24,81:21-82:12,83:14-84:1.

[11] Pina Dep. 46:13-47:24.

[12] Pina Dep. 48:4-14; Raymond Dep. 61:5-14, 63:1-4, 67:2-8; Raymond Aff. ¶¶ 10, 12 [#33-3].

[13] Raymond Aff. ¶ 11 [#33-3]; Pina Dep. 49:22-50:10.

[14] Pina Dep. 55:2-20.

[15] Raymond Dep. 67:3-8; Raymond Aff. ¶ 12 [#33-3].

the other.[16] After speaking with Pina, Raymond concluded that she had acted inappropriately and became concerned for her coworkers' safety. He suspended her pending further investigation.[17]

Raymond then spoke with two of Pina's coworkers who had heard Pina's accusations. One Cambridgeside Galleria sales associate said that Pina had told her Trench was sleeping with Williams.[18] Melody Mowatt, from the South Shore Plaza store, told Raymond that Pina had left harassing messages on her cell phone accusing her of having an affair with Williams. Both Fernandes and another employee became concerned upon listening to the messages.[19]

In light of these incidents, Raymond concluded that Pina had engaged in harassing, disorderly, and inappropriate behavior.[20] He consulted with TCP's Human Resources Department and terminated Pina's employment on July 27, 2007.[21]

Pina subsequently filed a Charge of Discrimination with the Massachusetts Commission Against Discrimination ("MCAD") on January 10, 2008. She alleged that TCP and Raymond terminated her employment on the basis of race and in retaliation for her report of alleged time card falsification. MCAD dismissed the charge on January 9, 2011.[22]

---

[16] Pina Dep. 48:4-14.

[17] Raymond Dep. 68:6-69:24; Raymond Aff. ¶ 13 [#33-3].

[18] Raymond Dep. 71:8-15.

[19] Raymond Dep. 116:7-118:5.

[20] Raymond Dep. 125:23-126:10; Raymond Aff. ¶ 16 [#33-3].

[21] Raymond Aff. ¶ 17 [#33-2].

[22] Mankes Aff. Ex. C [#33-2].

Pina reapplied to work at TCP on April 2, 2011.[23] She submitted an application for assistant store manager to a woman named "Courtney" at TCP's Downtown Crossing location.[24] Pina did not know whether the Downtown Crossing store had any openings for assistant store managers at that time.[25] In fact, it did not.[26] When a position subsequently opened, the District Manager responsible for the Downtown Crossing store, Cynthia Henry, transferred an internal candidate, an African-American woman, to the position without considering any external candidates. Henry had no knowledge of Pina's earlier MCAD charge.[27] After TCP failed to rehire her, Pina filed a second charge with MCAD on June 14, 2011.[28] MCAD dismissed that charge on October 27, 2011.[29]

Although Pina admits to most of the conduct resulting in her termination, she asserts that it merely served as a pretext to cover the real, discriminatory reason for her termination. Pina claims that Raymond fired her to avoid properly investigating her allegation of time-card falsification. Had Raymond properly investigated her report, he would have unearthed the specifics of an interracial romantic relationship between Williams and Giordano.[30] According to

---

[23] Mankes Aff. Ex. 2 [#44-2].

[24] Pina Dep. 91:14-92:19.

[25] Pina Dep. 92:18-24.

[26] Raymond Dep. 147:12-148:1; Henry Aff. ¶ 6 [#33-4].

[27] Henry Aff. ¶¶ 5, 7-10 [#33-4].

[28] Henry Aff. Ex. A [#33-4].

[29] Am. Compl. ¶ 29 [#22].

[30] Pina Dep. 77:4-24, 171:7-172:19, 178:24-179:21.

Pina, Raymond chose to fire her rather than confront this relationship. In support of her theory, Pina relies on the "history of interracial relationships and the reluctance of white men to discuss this issue and their dislike of the fact of interracial relationships."[31] She specifically notes that white men "do not like when their white women are dating black men."[32]

III.     Procedural History

        Pina filed her initial complaint in Suffolk Superior Court on July 19, 2011, and Defendants subsequently repaired to this court. They then moved to dismiss Pina's state law claims as barred by the statute of limitations. This court allowed the motion. Pina then amended her complaint to include allegations relating to her second MCAD charge. At the conclusion of these procedural maneuvers, essentially three counts remained: 1) violation of 42 U.S.C. § 1981 by Defendant Raymond for discriminatory firing and supervisor harassment; 2) violation of 42 U.S.C. § 1981 by Defendant TCP for discriminatory firing and retaliatory failure to rehire; and 3) violation of Mass. Gen. Laws ch. 151B(4) by Defendant TCP for retaliatory failure to rehire.

IV.     Discussion

        A.      Legal Standard

        To prevail on a motion for summary judgment, the moving party must show that "there is no genuine dispute as to any material fact" and the moving party "is entitled to judgment as a

---

[31] Pl.'s Opp'n Defs.' Mot. Summ. J. 10 [#39].

[32] Pina Dep. 179:12-14.

matter of law."[33] In deciding the motion, "a court is not authorized to make findings of fact."[34] The court must examine the record "in the light most favorable to, and drawing all reasonable inferences in favor of, the nonmoving party."[35]

If the moving party does not have the burden of proof at trial, that party may demonstrate that the evidence is insufficient to support the nonmoving party's case.[36] The nonmovant must then proffer evidence of some genuine issue of material fact to forestall summary judgment. "Genuine issues of material fact are not the stuff of an opposing party's dreams."[37] The nonmovant must offer "definite, competent evidence."[38]

B.    Defendants' Motion for Summary Judgment

The McDonnell Douglas burden-shifting framework applies to each of Pina's remaining claims.[39] First, Pina must make a prima facie showing of discrimination.[40] If she meets this burden, Defendants must then articulate "a legitimate, nondiscriminatory reason for the adverse

---

[33] Fed. R. Civ. P. 56(a); see Baltodano v. Merck, Sharp & Dohme (I.A.) Corp., 637 F.3d 38, 41 (1st Cir. 2011) (citing Collazo v. Nicholson, 535 F.3d 41, 44 (1st Cir. 2008)).

[34] Ross v. Framingham Sch. Comm., 44 F. Supp. 2d 104, 113 (D. Mass. 1999).

[35] De La Cruz v. El Conquistador Resort & Country Club, 218 F.3d 1, 5 (1st Cir. 2000).

[36] Celotex Corp. v. Catrett, 477 U.S. 317, 325 (1986) ("[T]he burden on the moving party may be discharged by 'showing'–that is, pointing out to the district court–that there is an absence of evidence to support the nonmoving party's case.").

[37] Mesnick v. Gen. Elec. Co., 950 F.2d 816, 822 (1st Cir. 1991).

[38] Id.

[39] Prescott v. Higgins, 538 F.3d 32, 40 (1st Cir. 2008) ("The familiar *McDonnell Douglas* framework governs Title VII, 42 U.S.C. § 1981, and Massachusetts General Laws, chapter 151B claims."); see Bhatti v. Trs. of Bos. Univ., 659 F.3d 64, 70 (1st Cir. 2011).

[40] Mesnick, 950 F.2d at 823.

employment decision."[41] Once Defendants advance a legitimate, nondiscriminatory reason, Pina must provide competent evidence that this reason is actually a pretext for racial discrimination.[42] She "can no longer rest on the initial inference of discrimination but, rather, must show that [Defendants'] articulated reason is pretextual."[43]

In evaluating Defendants' proffered reason, the court must focus on the decision-maker's perception.[44] "It is not enough for a plaintiff merely to impugn the veracity of the employer's justification; [she] must 'elucidate specific facts which would enable a jury to find that the reason given is not only a sham, but a sham intended to cover up the employer's real motive: [race] discrimination.' "[45] A plaintiff may show pretext either indirectly, by demonstrating "that the employer's stated reasons for its adverse actions were not credible," or directly, by demonstrating "that the action was more likely motivated by a discriminatory reason."[46] The plaintiff may show "such weaknesses, implausibilities, inconsistencies, incoherencies, or contradictions in the employer's proffered legitimate reasons for its action" that a reasonable fact finder could find them unworthy of belief.[47]

---

[41] Id.

[42] Id. at 824.

[43] Thompson v. Coca-Cola Co., 522 F.3d 168, 177 (1st Cir. 2008) (quoting Bennett v. Saint-Gobain Corp., 507 F.3d 23, 31 (1st Cir. 2007)).

[44] Mesnick, 950 F.2d at 824; see Joyal v. Hasbro, Inc., 380 F.3d 14, 19 (1st Cir. 2004).

[45] Mesnick, 950 F.2d at 824 (quoting Medina-Munoz v. R.J. Reynolds Tobacco Co., 896 F.2d 5, 9 (1st Cir. 1990)).

[46] Ianetta v. Putnam Invs., Inc., 183 F. Supp. 2d 415, 425 (D. Mass. 2002).

[47] Id. (quoting Morgan v. Hilti Inc., 108 F.3d 1319, 1323 (10th Cir. 1997)).

i.      Discriminatory Termination

To establish a prima facie case of disparate treatment, Pina must demonstrate that: 1) she is a member of a protected class; 2) she was qualified for her position as assistant store manager; 3) she was subjected to an adverse employment action; and 4) the position remained open or was filled by someone with similar qualifications.[48] In cases where the same individual both promotes and terminates the plaintiff within a short time frame, an inference arises in favor of the defendant and against discriminatory motive.[49] Although this inference is not determinative, "where evidence is not submitted to undercut the same actor circumstance, it is an important fact for the defendant."[50]

Pina has failed to establish a prima facie case of discrimination because she has not offered any evidence that she was qualified for her position.[51] Without this evidence, the court need not proceed further in the burden-shifting framework.

Even if the court concluded that Pina had met this initial burden,[52] she has offered no evidence to rebut Defendants' proffered legitimate, nondiscriminatory reason for her termination. According to Defendants, Raymond terminated Pina because she made harassing and

---

[48] Prescott v. Higgins, 538 F.3d 32, 40 (1st Cir. 2008).

[49] See Jacques v. Clean-Up Grp., Inc., 96 F.3d 506, 512 (1st Cir. 1996); LeBlanc v. Great Am. Ins. Co., 6 F.3d 836, 847 (1st Cir. 1993).

[50] Ortiz-Rivera v. Astra Zeneca LP, 596 F. Supp. 2d 231, 248 (D.P.R. 2009), aff'd, 363 F. App'x 45 (1st Cir. 2010).

[51] Prescott, 538 F.3d at 40-41.

[52] Mesnick v. Gen. Elec. Co., 950 F.2d 816, 823 (1st Cir 1991) ("The burden of making out a prima facie case is 'not onerous.' " (quoting Tex. Dep't of Cmty. Affairs v. Burdine, 450 U.S. 248, 253 (1981))).

inappropriate statements toward her supervisor and coworkers, creating an unsafe work environment. Pina has offered nothing to reveal this as a "sham" to cover discriminatory intent.[53] Certainly, this court is aware of the troubled history of prejudice and discrimination faced by interracial couples. But that is not evidence. Pina has offered nothing to support her theory of hostility and subterfuge.

Additionally, the court may appropriately consider the same actor inference against discrimination. Raymond appointed Pina to assistant store manager in July 2007 and terminated her employment that same month. This quick turnaround militates against discriminatory motive by Defendants.[54] Defendants have provided ample evidence that Raymond considered Pina's conduct unacceptable. Since Pina offers nothing to the contrary, she gives the court no reason to think Defendants acted on pretext.

ii.     Hostile Work Environment

In accusing Defendant Raymond of "racially motivated supervisor harassment,"[55] Pina appears to bring a claim for hostile work environment. To establish the prima facie case, Pina must demonstrate that: 1) she is a member of a protected class; 2) she experienced uninvited harassment; 3) the harassment was racially-based; 4) the harassment was "so severe or pervasive as to create an abusive work environment;" and 5) the harassment was both "objectively and

---

[53] See id. at 824.

[54] See LeBlanc, 6 F.3d at 847; Alicea v. Ondeo De Puerto Rico, 389 F. Supp. 2d 269, 273 (D.P.R. 2005); Tucker v. Manheim Auto Auction, 194 F. Supp. 2d 56, 59 (D.P.R. 2002).

[55] Am. Compl. ¶ 34 [#22].

subjectively offensive."[56] The court must consider several factors: "the frequency of the discriminatory conduct; its severity; whether it is physically threatening or humiliating, or a mere offensive utterance; and whether it unreasonably interferes with an employee's work performance."[57]

As a preliminary hurdle for the court, Pina does not clearly identify the alleged harassing conduct. She appears to challenge Raymond's investigation into her accusations of sexual impropriety. But Pina has not offered evidence, or even alleged, that Raymond harassed her based on her race. Nor has she alleged that Raymond threatened her physically or conducted his investigation in a manner humiliating to her. Furthermore, Raymond's investigation lasted only a week. Pina has not established that the alleged harassment was "so severe or pervasive as to create an abusive work environment."[58]

    iii.    Retaliatory Failure to Rehire

Pina claims that TCP retaliated against her by failing to consider her April 2011 application for re-employment. To make a prima facie case of retaliation, Pina must demonstrate that: 1) she engaged in protected conduct; 2) she suffered an adverse employment action; and 3) the adverse employment action was causally linked to the protected conduct.[59] For a claim of retaliatory failure to rehire, she must also show that (1) she applied for a particular position (2)

---

[56] Prescott, 538 F.3d at 42; see Thompson v. Coca-Cola Co., 522 F.3d 168, 179 (1st Cir. 2008).

[57] Bhatti v. Trs. of Bos. Univ., 659 F.3d 64, 73-74 (1st Cir. 2011) (quoting Vega-Colon v. Wyeth Pharm., 625 F.3d 22, 32 (1st Cir. 2010)).

[58] Prescott, 538 F.3d at 42.

[59] Id. at 43.

which was vacant and (3) for which she was qualified.[60] "A failure-to-hire claim obviously depends on the availability of a job opening. It is not unfair or unduly burdensome to expect a plaintiff to submit an application for that vacancy as a prerequisite for stating a failure-to-hire claim."[61]

In addition to failing to show that she was qualified for the assistant store manager position and that anyone overseeing the Downtown Crossing store knew of her MCAD complaint, Pina has also failed to offer any evidence that she applied for a vacant position. Pina argued before this court that Defendants had failed to establish that there were no openings at any TCP store in the area. But this misapprehends the burden of proof. Pina must offer evidence of a vacancy to establish her prima facie case. Having failed to do so, Defendants are entitled to summary judgment.

V.      Conclusion[62]

Pina has failed to make a prima facie showing of discrimination by Defendants TCP and Raymond and further failed to counter their legitimate, nondiscriminatory reasons for her termination. Defendants' Motion for Summary Judgment [#32] is ALLOWED.


AN ORDER HAS ISSUED.

                                                           /s/ Joseph L. Tauro
                                                       United States District Judge

---

[60] Velez v. Janssen Ortho, LLC, 467 F.3d 803, 803 (1st Cir. 2006).

[61] Id. at 808.

[62] To the extent that Pina attempted to assert any additional violations of 42 U.S.C. § 1981 or Mass. Gen. Laws ch. 151B, these claims also fail for the reasons illuminated above.